FILED
CLERK, U.S. DISTRICT COURT

APR 14 2008

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

**CR08-00436**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 08-_____ |
| Plaintiff, | |
| v. | I N F O R M A T I O N |
| | [18 U.S.C. § 1347: Health Care Fraud] |
| ALFRED LAWRENCE GLOVER, | |
| Defendant. | **UNDER SEAL** |

LODGED

2008 APR 10 PM 4: 36
CLERK US DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY

The United States Attorney charges:

COUNTS ONE THROUGH SEVEN

[18 U.S.C. § 1347]

A.   INTRODUCTORY ALLEGATIONS

At all times relevant to this Information:

The Defendant

1.   Defendant Alfred Lawrence GLOVER ("defendant GLOVER") became a Medicare Provider on or about November 17, 1999.

2.   Defendant GLOVER was a podiatrist licensed to practice in the State of California.

DLP:

3.    Defendant GLOVER had podiatric practices located at: (a) 656 East Regent, Inglewood, California; and (b) 4250 Glencoe Avenue, #1311, Marina Del Rey, California.  Both were within the Central District of California.

4.    From on or about July 19, 2002, through April 3, 2007, Medicare paid two durable medical equipment ("DME") supply owners ("DME Owner One" and "DME Owner Two"), who were co-schemers, $740,064.50 in claims.  Defendant GLOVER was the referring and prescribing medical professional for those claims.

The Medicare Program

5.    Medicare is a federal health care benefit program operated by the United States Department of Health and Human Services.

6.    Medicare contracts with private insurance companies to process and pay Medicare claims.  Throughout the time period that DME Owner One and DME Owner Two were in operation, the two companies that processed and paid Medicare DME claims in Southern California were: (a) Connecticut General Insurance Group of North America ("CIGNA"), which was the Durable Medical Equipment Regional Carrier ("DMERC") for Region D, the western United States, and (b) Noridian Administrative Services ("NAS").

7.    Medicare provides reimbursement for medical care, equipment, and supplies to persons age sixty-five years and older and to certain disabled persons.  Persons receiving Medicare insurance benefits are referred to as Medicare "beneficiaries."  Each Medicare beneficiary is given a unique Health Identification Card ("HIC") number.

8.    Persons and entities that provide medical services

2

that are reimbursed by Medicare are called Medicare "providers."
To become eligible to participate in the Medicare program, a
provider must submit an application to Medicare and be approved.
If approved, the provider is assigned a Medicare provider
number.

9.   Medicare reimburses providers for certain types of
medically necessary medical treatment, tests, equipment and
supplies, including medically necessary DME prescribed by the
beneficiary's physician.

10.   Medicare requires that a DME supplier have a
physician's order or prescription for DME before billing
Medicare for any equipment supplied to a beneficiary.   For some
types of DME, Medicare further requires that a provider have a
completed Certificate of Medical Necessity ("CMN"), signed by
the prescribing physician and showing that the patient has the
medical conditions necessary to justify the DME.

11.   Medicare pays for a motorized wheelchair only for
those beneficiaries who are so weak that they are unable to walk
from bed to the other rooms of their homes and cannot use a
manual wheelchair.   A CMN was required for motorized wheelchairs
up until May 5, 2005.

12.   Medicare pays for the monthly rental of powered
pressure-reducing mattresses only when the beneficiary has
pressure ulcers or has received recent treatment, such as a skin
graft, for such ulcers.   A CMN was required for a powered
pressure-reducing mattress up until July 1, 2007.

13.   Medicare pays for a hospital bed only when a
beneficiary's condition requires positioning of the body in ways

3

not feasible in an ordinary bed or requires special attachments that cannot be attached to an ordinary bed.  A CMN was required for a hospital bed up until October 1, 2006.

14.  Medicare will only pay for enteral nutrition when a beneficiary is unable to consume normal food and drink and must instead ingest the enteral nutrition through a tube or shunt.  A CMN was required for enteral nutrition up until July 1, 2007. Medicare now requires that the DME supplier complete a DME Information Form ("DIF") instead of a CMN.  The DIF resembles the CMN; however, the DIF does not require a physician's signature.

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

B.   THE SCHEME TO DEFRAUD

15.   Beginning on or about July 19, 2002, and continuing to on or about April 3, 2007, in Los Angeles County, within the Central District of California, and elsewhere, defendant GLOVER and other co-schemers known and unknown to the United States Attorney knowingly, willfully, and acting with intent to defraud, executed a scheme and attempted to execute a scheme: (a) to defraud a health care benefit program, namely Medicare, as to material matters in connection with the delivery of and payment for health care benefits, items, and services; and (b) to obtain money from Medicare by means of material false and fraudulent pretenses and representations and the concealment of material facts in connection with the delivery of and payment for health care benefits, items, and services.

C.   MEANS TO ACCOMPLISH THE SCHEME TO DEFRAUD

The fraudulent scheme operated, in substance, in the following manner:

16.   In exchange for a kickback, defendant GLOVER would write prescriptions for DME – primarily motorized wheelchairs with accessories, hospital beds with powered pressure-reducing mattresses, and enteral nutrition – for the Medicare beneficiaries brought to him by one or more marketers, even though as defendant GLOVER well knew, the beneficiaries did not qualify for the DME ordered.

17.   The marketers would provide the prescriptions to various DME companies that were Medicare providers knowing that the prescriptions were for DME that was not medically necessary and that defendant GLOVER was paid a kickback for writing the

prescriptions.   The DME companies knew they were receiving false and fraudulent prescriptions from marketers and that defendant GLOVER had been paid a kickback for the prescription.

18.   Defendant GLOVER would sign CMNs showing that the Medicare beneficiaries had the health conditions and physical limitations qualifying them for the DME he prescribed, even though, as defendant GLOVER well knew, the beneficiaries did not have those conditions and limitations.

19.   Defendant GLOVER would provide the false CMNs to the marketers knowing that they would be used by DME companies to submit false claims to Medicare for DME that did meet the requirements for Medicare reimbursement.   The DME companies knew they were receiving false and fraudulent CMNs and that defendant GLOVER had been paid a kickback for the CMN.

20.   Upon receipt of prescriptions and CMNs signed by defendant GLOVER, the marketers would pay defendant GLOVER approximately $50-$100 for prescribing and providing a CMN for a motorized wheelchair, approximately $25 to $50 for prescribing and providing a CMN for a hospital bed and air pressure mattress, and approximately $25 for prescribing and providing a CMN for enteral nutrition.

21.   As a direct and intended result of defendant GLOVER's conduct, the DME companies would submit false claims for payment to Medicare and in many cases Medicare would pay the claims.

22.   By means of the above-described conduct, defendant GLOVER and his co-schemers caused the submission of false and fraudulent claims to Medicare that resulted in a loss to Medicare of approximately $740,064.50.

C.   THE EXECUTION OF THE FRAUDULENT SCHEME

23.   On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant GLOVER and others known and unknown to the United States Attorney, for the purpose of executing the scheme to defraud described above, knowingly and wilfully submitted and caused to be submitted to Medicare the following false and fraudulent claims for payment:

| COUNT | Name | Date Claim Submitted | Claim Number | DME Type | Amount Paid |
|-------|------|----------------------|--------------|----------|-------------|
| ONE | N.V. | 3/10/05 | 105069805184000 | Wheelchair and Accessories | $5124.80 |
| TWO | K.D. | 5/24/05 | 105144831983000 | Wheelchair and Accessories | $5124.80 |
| THREE | K.L. | 5/25/05 | 105145800138000 | Wheelchair and Accessories | $5124.80 |
| FOUR | A.C. | 6/15/05 | 105166823570000 | Wheelchair and Accessories | $0 |

\\
\\
\\
\\
\\
\\
\\
\\
\\
\\

| | | | | | |
|---|---|---|---|---|---|
| FIVE | K.D. | 2/9/06 | 106040805812000 | Air Pressure Mattress | $539.98 |
| SIX | N.V. | 4/26/06 | 106116800256000 | Air Pressure Mattress | $422.10 |
| SEVEN | K.L. | 7/26/06 | 106207800503000 | Air Pressure Mattress | $422.10 |

THOMAS P. O'BRIEN
United States Attorney

CHRISTINE C. EWELL
Assistant United States Attorney
Chief, Criminal Division

DOUGLAS A. AXEL
Assistant United States Attorney
Chief, Major Frauds Section

BEONG-SOO KIM
Assistant United States Attorney
Deputy Chief, Major Frauds Section

DIANA L. PAULI
Assistant United States Attorney
Major Frauds Section

8